UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES J. MILLER,

    Petitioner,

-vs-                                                          Case No. 8:14-cv-1760-T-36AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. Section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Doc. No. 3). Thereafter, Respondent filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the Rules Governing Section 2254 Cases in the United States District Courts (Doc. No. 6). Petitioner filed a reply to the response (Doc. No. 8).

Petitioner alleges three claims for relief in his habeas petition:

1. His no contest plea to burglary of a structure and failure to appear was involuntary because defense counsel coerced him into pleading with threats that he would receive a longer sentence if he proceeded to trial;

2. He was denied due process during the state post-conviction proceedings when the state post-conviction court held an unscheduled evidentiary hearing, during which Petitioner did not have his legal materials; and

3. Defense counsel rendered ineffective assistance in failing to object to the State's false assertions that were used to enhance Petitioner's sentence as a violent career criminal.

**I. PROCEDURAL HISTORY**

Petitioner pleaded no contest to burglary and failure to appear (Respondent's Ex. 1c). He was sentenced, as a Violent Career Criminal Offender (VCC), to 10 years in prison on the burglary conviction, and 5 years in prison (concurrent to the burglary count) on the failure to appear conviction (Respondent's Ex. 1d). He did not appeal.

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, asserting four grounds of ineffective assistance of trial counsel (Respondent's Ex. 1a). The state post-conviction court summarily denied Claims One, Three, and Four, and directed the State to respond to Claim Two (Respondent's Ex. 1b). After the State responded (Respondent's Ex. 1h), the state post-conviction court granted an evidentiary hearing on Claim Two (Respondent's Ex. 1i). Prior to the evidentiary hearing, the state post-conviction court held a status hearing during which the State presented a copy of a criminal judgment from New Jersey in which Petitioner was convicted of burglary (Respondent's Ex. 1j). In light of that judgment, the state post-conviction court concluded that an evidentiary hearing was unnecessary and Petitioner was correctly sentenced as a VCC, and denied Claim Two (Respondent's Ex. 1j, 1k). The state appellate court affirmed the denial of the Rule 3.850 motion without a written opinion (Respondent's Ex. 3).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible

under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

**A. Standard of Review Under the AEDPA**

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

3

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

The two part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In the context of a guilty plea, to establish prejudice Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted).

## III. ANALYSIS

**Ground One**

Petitioner contends that his no contest plea was involuntary because it was coerced by defense counsel's "threat" that if Petitioner did not plead no contest, went to trial and was convicted, the court would impose a "more severe sentence than the 10-year minimum mandatory sentence for the burglary count and a concurrent 5-year sentence for the failure to appear. . . ." (Dkt. 1, p. 5a).[2] Petitioner also asserts that counsel coerced him to accept the plea by failing to challenge the

---

[2] In his state Rule 3.850 motion, Petitioner asserted that counsel said "You need to plea or you'll get (20) years." (Respondent's Ex. 1a, p. 4).

5

prosecutor's misrepresentation of the number of prior felony convictions he had.

Petitioner raised this claim in Ground One of his Rule 3.850 motion (Respondent's Ex. 1a, pp. 4-5). In denying the claim, the state post-conviction court stated:

> The Defendant first asserts that his plea was not [sic] "not competent, voluntary, or intelligently entered as a proximate result of being deprived effective assistance of counsel." Specifically, the Defendant alleges that counsel "affirmatively misadvised Defendant and misrepresented the State's intentions in this case by repeatedly using scare tactics and outright coercion to induce a plea." He further complains that counsel threatened him, stating "You need to plea or you'll get (20) years." As a consequence, the Defendant asserts that he did not make a "knowing and willing valid waiver of his rights."
>
> The Defendant's claim is without merit. Specifically, during the plea colloquy, the Defendant admitted under oath that he was waiving his rights freely and voluntarily, without threat or coercion. (Exhibit D: Change of Plea Hearing p. 12). Therefore, the present claim that he was threatened by counsel to enter his plea is refuted from his own sworn statement during the plea colloquy. The Defendant asks this Court to disregard his sworn statements provided at the plea colloquy and believe that he was otherwise coerced into entering his plea. However, a defendant's sworn answers during a plea colloquy must mean something. A criminal defendant is bound by his sworn assertions. See Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007) ("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences.").
>
> Moreover, the record reflects that preceding the plea colloquy, in the presence of the Defendant, counsel attempted to secure a sentence in Case No. CRC10-14655CFAN0 without the VCC enhancement. A discussion ensued in which the Court explained that in light of the Defendant's extensive criminal record, the VCC enhancement would be applied to the Defendant's sentence. (Exhibit D: Change of Plea Hearing pp 4-8). Nonetheless, the Defendant chose to proceed with the plea in exchange for the agreed-upon sentence of 10 years in prison as a violent career criminal. (Exhibit D: Change of Plea Hearing p. 9). Thereafter, the Court conducted a thorough plea colloquy in which the Defendant affirmed that he had sufficient time to review discovery and discuss the case with counsel. (Exhibit D: Change of Plea Hearing pp. 10-11). The Defendant affirmed that he had reviewed the plea form with counsel and he understood the rights he was giving up by entering his plea. (Exhibit D: Change of Plea Hearing pp. 11-12). Furthermore, the Defendant affirmed that he was clear-minded and understood what was occurring. Significantly, the Defendant stated under oath that he was satisfied with counsel's representation.

6

(Exhibit D: Change of Plea Hearing pp. 13-15).

In light of the Defendant's sworn statements enumerated herein, it is evident from the record that the Defendant's plea was knowingly, intelligently, and voluntarily entered with the advice of competent counsel in whom the Defendant had expressed his satisfaction. The Defendant's claim that his plea was involuntarily entered due to the threats or coercion of counsel is refuted from the face of the record. The Defendant received the sentence bargained for and the record demonstrates that he was eager to avail himself of the agreed-upon disposition. In fact, the record reflects that the Defendant wished to "take care of this right here and right now." (Exhibit D: Change of Plea Hearing p. 8). It is disingenuous of the Defendant to now claim that he was coerced by counsel into entering his plea.

Moreover, the Defendant cannot demonstrate the requisite prejudice entitling him to relief. In determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, such as the colloquy at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence a defendant faced at trial. See Grosvenor, 874 So. 2d at 1181-82. As evidenced by the Defendant's answers during the plea colloquy, the Defendant entered a knowing, intelligent, and voluntary plea with the advice of competent counsel in whom the Defendant expressed his satisfaction. The Defendant was eager to avail himself of the favorable plea rather than expose himself to a significantly longer prison sentence had he been found guilty at trial. (Exhibit D: Change of Plea Hearing pp. 9-16). As a VCC, the Defendant faced a maximum possible sentence of 15 years in prison on Count One with a 10-year minimum mandatory term included therein and 5 years in prison on Count Two. However, instead of receiving 20 years in prison, the Defendant received half of the maximum possible sentence he faced if convicted at trial.

Furthermore, the State possessed overwhelming evidence of the Defendant's guilt. For instance, the State possessed video evidence capturing the Defendant smashing the storefront window and then entering the business and attempting to take money from the cash register. (Exhibit D: Change of Plea Hearing p. 6). Additionally, a witness observed the Defendant burglarizing the business. (Exhibit D: Change of Plea Hearing p. 7). In light of the overwhelming evidence of the Defendant's guilt, the Court finds that the Defendant would not have proceeded to trial in the instant case, even absent counsel's purported coercion. Consequently, based upon the foregoing, Claim One is denied.

(Respondent's Ex. 1b, pp. 2-4). The state appellate court affirmed the denial of this claim without a written opinion (Respondent's Ex. 3).

The state courts' denial of this claim was not objectively unreasonable. Counsel's advice that Petitioner should plead or risk a 20 year sentence if he proceeded to trial is not a basis for finding Petitioner's plea involuntary. *See McMann v. Richardson*. 397 U.S. 759, 770 (1970) ("That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."); *United States v. Himick*, 139 Fed. App'x 227, 228-29 (11th Cir. 2005) ("[A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence."); *Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir. 1970) (a defendant's erroneous sentence expectation based on defense counsel's erroneous sentence estimate did not render defendant's plea involuntary). As the state post-conviction court noted, counsel's advice with regard to the maximum sentence that the trial court could impose had Petitioner proceeded to trial and been convicted of burglary and failure to appear (20 years total) was an accurate statement of Florida law. *See* Fla. Stat. §§ 810.02(3); 843.15(1)(a); 775.082(3)(c),(d) (2011). Counsel cannot be considered ineffective for providing Petitioner with correct information regarding possible sentencing outcomes. Moreover, counsel had a duty to assess the strength of the State's case and based on that assessment, advise Petitioner what course of action was in his best interest. *See Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam) ("counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client.").

Petitioner has failed to demonstrate that his plea was involuntarily entered. The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent

8

choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).[3] "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

The transcript of the plea hearing (Respondent's Ex. 1e) reflects that Petitioner understood the charges, the maximum term he faced, that he would be sentenced to ten years as a violent career criminal, and the rights he was waiving (*Id.*). The record further shows that Petitioner was not forced to enter the plea and believed pleading to the charges to be in his best interest. Petitioner makes no allegation that his statements at the change of plea hearing were false.[4] Accordingly, the

---

[3] Petitioner's no contest plea is subject to the same analysis as a guilty plea. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) ("The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary. The rule is the same for pleas of guilty or nolo contendere."). *See also Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) (stating that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty.").

[4] Although Petitioner asserts that his statements during the change of plea hearing were "rehearsed responses" (Doc. No. 1, p. 5a), he does not contend that they were false.

9

record supports the conclusion that Petitioner's plea was voluntary.

To the extent his decision to plead might have involved a fear of receiving a greater sentence upon conviction at trial, Petitioner fails to show that this consideration rendered his plea involuntary. *See, e.g., Brady v. United States*, 397 U.S. 742, 751 (1970) ("We decline to hold . . . that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.").

Petitioner has not demonstrated that his plea was involuntary on the basis alleged. He does not show that the state courts' rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Consequently, Ground One does not warrant federal habeas relief.

**Ground Two**

Petitioner contends that he was denied due process when the state post-conviction court held an unscheduled evidentiary hearing on his Rule 3.850 motion during which the State presented evidence, but Petitioner was unable to present evidence because he did not have his legal materials. This claim fails because "defects in state collateral proceedings do not provide a basis for habeas relief." *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir.2009) (citations omitted). This is so because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Id*. at 1366; *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due process did not state a basis for habeas relief because the claim "[went] to issues unrelated

to the cause of petitioner's detention"); *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir.2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three**

Petitioner contends that counsel was ineffective in failing to object when the State falsely stated that: 1) Petitioner had 17 prior felony convictions; and 2) one of the convictions used to enhance his sentence was committed during a separate criminal episode. This false information, Petitioner contends, was used by the court to enhance Petitioner's sentence as a VCC.

Initially, Petitioner's voluntary plea waived this ineffective assistance of counsel claim. A voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992). This claim alleges a constitutional violation that occurred before he pleaded guilty (*see* Respondent's Ex. 1e, transcript p. 6). The voluntary plea waived Petitioner's antecedent non-jurisdictional ground because the ground does not implicate the validity of the plea. *See Wilson*, 962 F.2d at 997 (holding that a claim of pre-plea, ineffective assistance of counsel is waived). Accordingly, Ground Three is precluded by his no contest plea.

Even if the claim were not waived by the plea, it would fail on the merits. In state court Petitioner raised this claim as Ground Two of his Rule 3.850 motion (Respondent's Ex. 1a, pp. 5-6). In denying the claim, the state post-conviction court stated:

> In Claim Two, Defendant alleges that his counsel was ineffective for "fail[ing] to contest the facts stated on the prior convictions used to validate the Violent Career Criminal Caption," because he does not in fact qualify for sentencing as a VCC. When alleging ineffective assistance of counsel, the defendant must prove

11

first that counsel's performance was deficient and that the deficiency prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668 (1984). The act or omission of counsel must fall below a standard of reasonableness under prevailing professional norms. Id. The defendant must show a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. See Rutherford v. State, 727 So. 2d 216 (Fla. 1998). If the defendant fails to satisfy one component, the inquiry ends, and the reviewing court need not determine if the defendant has satisfied the other. See Maxwell v. Wainwright, 490 So. 2d 927 (Fla. 1986).

There is a strong presumption that counsel has rendered adequate assistance in the exercise of reasonable professional judgment. See White v. State, 729 So. 2d 909, 912 (Fla. 1999). In a motion for postconviction relief, the defendant bears the burden of establishing a prima facie case based on a legally valid claim. See Griffin v. State, 866 So. 2d 1 (Fla. 2003). Conclusory allegations are insufficient to meet this burden. Id.

To qualify for sentencing as a VCC, a defendant must have three or more qualifying prior convictions. See § 775.084(1)(d), Fla. Stat. (2010). Qualifying convictions include any forcible felony, as described in Section 776.08, which includes burglary. Qualifying convictions also include out-of-state convictions for offenses that are "substantially similar in elements and penalties to an offense in this state." § 775.084(1)(e), Fla. Stat. However, any prior felony must have been sentenced separately from any other conviction in order to be considered as one of the three qualifying offenses. See § 775.084(5). Fla. Stat.; See also Boyer v. State, 797 So. 2d 1246, 1250 (Fla. 2001) ("although the sentencing for separate convictions arising out of unrelated crimes can take place on the same day, the sentences cannot be part of the same sentencing proceeding.").

Defendant argues that his VCC status is erroneous because two of his convictions could not be considered as separate sequential convictions, in that they arose out of the same criminal episode. Upon review of the record, the Court discovered that the sentencing packet in the court file does not reflect the requisite number of prior convictions. The sentencing packet reflects only eleven prior burglary convictions, ten of which were sentenced on May 14, 2007. *(See Ex. B: Sentencing Packet)*. Defendant was sentenced for an eleventh burglary conviction on July 30, 2008. (*See Ex. B: Sentencing Packet*). Therefore, the record reflects only two prior sentencing dates, which could be considered as qualifying convictions. The State was directed to respond as to whether Defendant in fact qualifies as a VCC.

In its response, the State argued that Defendant does in fact qualify. The State argued first that Defendant's two sentencing dates for separate burglary convictions do not violate double jeopardy and second that Defendant has the requisite prior convictions. The State attached a judgment and sentence from the state of New Jersey, which indicated that Defendant was convicted of burglary in that jurisdiction

on March 31, 1995. The Court agreed with the State's first point and found that Defendant's Florida burglary convictions did not violate double jeopardy because each burglary was alleged to have occurred at distinct locations. However, the Court found that it could not rely on the judgment and sentence from the State of New Jersey because it was not part of the court record. See Fla. R. Crim P. 3.850(d); Johnson v. State, 736 So. 2d 713 (Fla. 2d DCA 1999) (citing Cintron v. State, 504 So. 2d 795 (Fla. 2d DCA 1987)). The Court further found that counsel's stipulation as to Defendant's qualifications did not bar his claim in a motion for postconviction relief that he in fact does not qualify. See Hearns v. State, 912 So. 2d 377 (Fla. 3d DCA 2005). Accordingly, the Court entered an order on February 27, 2013, granting an evidentiary hearing on the sole issue of whether Defendant has the requisite convictions to qualify as a VCC.

On March 26, 2013, the Court conducted a hearing. The Court determined that Defendant was not entitled to counsel and Defendant appeared at the hearing *pro se*. See Russo v. Akers, 724 So. 2d 1151, 1152-53 (Fla. 1998). Assistant State Attorney Cristin Buell appeared on behalf of the State. At the hearing, the State presented a judgment and sentence from the state of New Jersey, which indicates that Defendant was sentenced on March 31, 1995, for one count of second-degree burglary and one count of third-degree burglary. (*See Ex. C: Sentencing Packet*). The State also submitted documents under seal that indicate Defendant has not been pardoned or granted executive clemency with regard to his convictions. *(See Ex. C: Sentencing Packet)*. Defendant did not attempt to refute the validity of the documents or raise any argument as to the New Jersey convictions.

Section 2C:18-2, New Jersey Statutes (1993), provides in pertinent part:

a. Burglary defined. A person is guilty of burglary if, with purpose to commit an offense therein or thereon he:
> (1) Enters a structure, or a separately secured or occupied portion thereof unless the structure was at the time open to the public or the actor is licensed or privileged to enter;
> (2) Surreptitiously remains in a structure or a separately secured or occupied portion thereof knowing that he is not licensed or privileged to do so; or
> (. . . )

b. Grading. Burglary is a crime of the second degree if in the course of committing the offense, the actor:
> (1) Purposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone; or
> (2) Is armed with or displays what appear to be explosives or a deadly weapon.

Considering the foregoing, the Court finds that Defendant was convicted of

one count of second-degree burglary and one count of third-degree burglary and was sentenced on March 31, 1995, in the state of New Jersey. The Court further finds that the New Jersey burglary statute is substantially similar to the Florida burglary statute in that they proscribe similar conduct, are both serious felony offenses, and have similar sentencing consequences. See §§ 810.02, 775.082, Fla. Stat.; N.J.S.A. 2C:18-2, 43-6 (1993). It is now apparent from the record that Defendant has three prior qualifying VCC sentencing dates; May 14, 2007, July 30, 2008, and March 31, 1995. See § 775.084(1)(d), Fla. Stat. Therefore, Defendant's claim that counsel was ineffective for stipulating to Defendant's qualifications must be denied; Defendant cannot show that he was prejudiced by counsel's actions when it is clear that Defendant's sentencing outcome would not have been different. See Hearns v. State, 912 So. 2d 377, 379 (Fla. 3rd DCA 2005).

(Respondent's Ex. 1k, pp. 2-4). The state appellate court affirmed without a written opinion (Respondent's Ex. 3).

Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence. Consequently, the court must defer to the state court's findings that: (1) Petitioner was convicted of and sentenced for ten burglaries in Florida in May 2007; (2) Petitioner was convicted of and sentenced for one burglary in Florida in July 2008; and (3) Petitioner was convicted of and sentenced for two burglaries in New Jersey in March 1995. Additionally, the record establishes that: (1) the primary offense date was July 6, 2010 (Respondent's Ex. 1g); and (2) Petitioner served time in state prison for the Florida burglaries (Respondent's Ex. 1f). Finally, this court must abide by the state court's determination regarding the statutory qualifications for VCC sentencing, and the court's determination that Petitioner's prior convictions satisfied the statutory qualifications for VCC sentencing. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law. . .binds a federal court sitting in habeas corpus.").[5]

---

[5]In Florida, "to be sentenced as a violent career criminal, a defendant must have been previously incarcerated in state or federal prison, must have been convicted three times as an adult of certain violent felonies (listed in the statute), and must have committed another such offense [on or after October 1, 1995]." *Clines v. State*, 912 So. 2d 550, 553 (Fla. 2005) (citing § 775.084(1)(d), Fla. Stat. (2002)).

14

In light of the state court's findings and the record, Petitioner has failed to show that counsel had a viable basis for objecting to Petitioner's VCC sentence on the ground that he did not have sufficient qualifying prior convictions.[6] Petitioner therefore has failed to show deficient performance. Accordingly, the state courts' denial of this ineffective assistance of counsel claim was not objectively unreasonable under *Strickland*.

Finally, to the extent Petitioner contends that counsel was ineffective in failing to object to the State's statement during the change of plea hearing that Petitioner had 17 prior felonies (*see* Respondent's Ex. 1e, transcript p. 6), Petitioner has failed to demonstrate that the statement was false or misleading. The record supports the statement, since the Criminal Punishment Scoresheet in Petitioner's case indicates that Petitioner had 17 prior felonies (Respondent's Ex. 1g, p. 1). Moreover, the court takes judicial notice of information available July 12, 2017, on the database maintained by the Florida Department of Corrections Offender Network, http://www.dc.state.fl.us, which indicates that Plaintiff's criminal history includes 11 burglary convictions in Florida.[7] Fed.R.Evid. 201. And Petitioner does not dispute the number of convictions he had. Rather, he merely argues that "for purposes of VCC sentencing there were only two convictions," since "there were only two sentencing hearings, not 17." (Dkt. 8, p. 14). Therefore, the State's assertion that

---

[6]Petitioner appears to argue that he only had two qualifying convictions because the burglary for which he was convicted in July 2008, was committed on the same day as one of the ten burglaries for which he was convicted in May 2007. The fact that the two burglaries were committed on the same date has no bearing on whether they are separate qualifying offenses for purposes of determining whether Petitioner was a VCC. Rather, the fact that Petitioner was sentenced separately for the two burglaries is the relevant issue. *See* § 775.084(5) ("In order to be counted as a prior felony for purposes of sentencing under this section, the felony must have resulted in a conviction sentenced separately prior to the current offense and *sentenced separately from any other felony conviction that is to be counted as a prior felony*.") (emphasis added).

[7]The burglaries occurred in 2006 on October 25 and 27, November 1, 15 (2 burglaries), 25, and 26, and December 2, 3, 17, and 18.

Petitioner had 17 prior felony convictions was not false or misleading,[8] and defense counsel was not deficient in failing to argue that it was. Accordingly, Ground Three does not warrant federal habeas relief.

Any claims not specifically addressed in this Order have been determined to be without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk** shall enter judgment in favor of Respondent and close this case.

3. This court should grant an application for a Certificate of Appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make this showing.[9] Accordingly, a Certificate of Appealability is **DENIED** in this case. And because Petitioner is not entitled to a Certificate of Appealability, he is not entitled to proceed on appeal *in forma pauperis*.

---

[8]It is apparent from the transcript of the change of plea hearing that the State was not arguing that Petitioner had 17 convictions that were qualifying offenses for purposes of determining whether Petitioner was a VCC. Rather, the State's comment that Petitioner "has 17 prior felonies, 7 prior misdemeanors; 13 of those felonies are burglary related. . ." (Respondent's Ex. 1e, transcript p. 6) was in response to defense counsel's argument that the trial court should not sentence Petitioner as a VCC, since it was not necessary for the protection of the public (*Id*., transcript pp. 4-6). *See Clines*, 912 So. 2d at 558 ("A trial court may depart from the sentence required for a habitual felony offender, habitual violent felony offender, or violent career criminal, provided that it explains in writing why 'such sentence is not necessary for the protection of the public.'") (citing § 775.084(3)(a)6., (3)(c)5., (4)(e), Fla. Stat. (2002)).

[9]Pursuant to Rule 11 of the Rules Governing Section 2254 Cases In the United States District Courts:

The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . .If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

**DONE AND ORDERED** in Tampa, Florida on August 2, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record